**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **JEFFREY BLADDICK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL NO. 09-cv-330-WDS** |
| | ) | |
| **BRYAN POUR, TODD H. EPSTEN, BETTYE BATTLE-TURNER, VINCENT J. BOMMARITO, JULIUS K. HUNTER, FRANCIS G. SLAY, DAVID R. HEATH, and MAC AND MICK'S SPORTS BAR & GRILL, INC., a corporation,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER**

**STIEHL, District Judge:**

Before the Court is defendants', individual members of the City of St. Louis Metropolitan Police Department Board of Police Commissioners named in their official capacities[1] ("Board"), motion for summary judgment against plaintiff pursuant to Fed. R. Civ. P. 56 (Doc. 72). Plaintiff has not filed a response to the Board's motion for summary judgment.

---

[1]The Board of Police Commissioners consists of defendants Todd H. Epsten, Bettye Battle-Turner, Vincent J. Bommarito, Julius K. Hunter, and Francis G. Slay. The Board asserts that David Heath is the Board Secretary and not, in fact, a member of the Board.

Plaintiff asserts that the Board members are the proper parties for actions against the police department of the City of St. Louis pursuant to MO. REV. STAT. § 84.010, which

> indicates that neither the City nor its agents possess the authority to make official policy concerning the actions of the Board of Police Commissioners or individual police officers. Therefore, the City cannot, as a matter of law, be liable under section 1983 as an official policy maker responsible for approving or condoning the actions of the police officers.

*Crigler v. City of St. Louis, Mo.*, 767 F.Supp. 197, 200 (E.D. Mo. 1991). Under Missouri law, to bring a claim against the Board of Police Commissioners, the complaint must name the individual board members in their official capacity, as the plaintiff did here. *Id.* at 198.

## BACKGROUND

This action arises out of the shooting of plaintiff by defendant Bryan Pour ("Pour") in the parking lot of Mac and Mick's Sports Bar & Grill ("Mac and Mick's") during the early morning hours of November 9, 2008. On the evening of November 8, 2008, and the morning of November 9, 2008, Pour and other off-duty City of St. Louis police officers patronized Mac and Mick's in Granite City, Illinois. Pour and the other officers were not wearing their police uniforms, but were allegedly brandishing their badges and "taking other affirmative steps to advertise the fact that they were police officers." (Second Am. Compl. 4.) At least three of the off-duty officers were carrying their service weapons, including Pour. Pour was allegedly kicked out of Mac and Mick's because of his level of intoxication, but he did not immediately leave and instead remained on the parking lot.

Soon after Pour was kicked out, plaintiff arrived at Mac and Mick's and spoke to some of his friends, who were smoking cigarettes outside of the bar. Plaintiff's friends then proceeded toward their car, at which time Pour and plaintiff's friends engaged in some sort of argument and scuffle which left Pour on the ground. During his deposition, plaintiff testified that he heard raised voices and proceeded toward his friend's car. Plaintiff stated that he observed Pour sitting on the ground and tried to help him up by standing behind him and using Pour's elbows as a way to lift him. Plaintiff said to Pour, "hey, look, my buddies didn't hurt you." (Bladdick Dep. 40-42;52, Dec. 29, 2009.) Plaintiff stated that Pour said nothing but then spun around, drew his gun, and pressed it against plaintiff's chest. Plaintiff testified that he tried to step back but, "before I could do anything, I'm shot." (Bladdick Depo. 41, 42, 54.) Pour fired a single round and the bullet became lodged in Plaintiff's torso.

During his deposition plaintiff also stated that he had not met nor conversed with Pour at any point in the evening before helping him off the ground, but had merely seen Pour on the parking lot at Mac and Mick's earlier that evening. Plaintiff stated that he had no idea that Pour was a police officer, and in fact plaintiff described Pour as a bald male in a striped shirt and jeans. In other words, during plaintiff's interaction with Pour, Pour was not wearing his uniform, did not show his badge, did not identify himself as an officer, and did not orally communicate any type of order pursuant to his police power.

Four Counts of Plaintiff's Second Amended Complaint remain in this case: (I) violation of 42 U.S.C. § 1983 by defendant Pour in his individual capacity;[2] (II) violation of 42 U.S.C. § 1983 by the St. Louis Metropolitan Police Department through the defendant Board; (III) negligence by defendant Mac and Mick's; (IV) negligence by defendant Pour.[3]

The Board has filed its motion for summary judgment with respect to Count II of plaintiff's second amended complaint, the only Count that is directed at the Board. In Count II plaintiff alleges that the Board is liable under 42 U.S.C. § 1983 because it developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of persons, such as plaintiff, which caused the violation of plaintiff's rights. More specifically, the Board employed a firearm policy for its officers (both on and off duty) which failed to set forth any guidance regarding the transport of firearms across state lines, the carrying of firearms in situations which present a risk of intoxication, and/or any other circumstances in which an off-duty officer's judgment may be

---

[2]In his second amended complaint (Doc. 41) plaintiff asserts that the claims against Pour are against him in his individual capacity, but also asserts that at all relevant times Pour was acting under the color of law.

[3]Count V, vicarious liability of the City of St. Louis was previously dismissed without prejudice by this Court (Doc. 64).

impaired, and instead, leaving the carrying of firearms while off-duty solely to the officer's discretion, thereby creating the impression with Pour that his acts were tolerated by the Board.

Additionally, plaintiff alleges that as a result of the Board's policies and customs, officers, including Pour, believed that their actions would not be properly monitored by supervisory officers and that any misconduct would not be investigated or sanctioned, and would be tolerated. Finally, plaintiff alleges that the Board's policies and customs demonstrate a deliberate indifference on the part of the Board to the constitutional rights of persons who may foreseeably come into contact with officers of the Board, both on and off-duty, and caused the violation of plaintiff's rights.

**LEGAL STANDARD**

Under Fed. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The plaintiff has filed nothing in response to the Board's motion. According to Local Rule 7.1(c)(1), the plaintiff had 30 days after service of the motion to file a response. Local Rule 7.1(c)(2) states that "[f]ailure to timely file a response to a motion may, in the Court's discretion, be considered an admission of the merits of the motion." Additionally, the Court notes that pursuant to Fed. R. Civ. P. 56(e)(2):

> [w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading;

> rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial. **If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.**

(Emphasis added); *See also Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994). The Supreme Court in *Celotex* explained:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Plaintiff filed nothing in response to the Board's motion for summary judgment, even though nearly six months have passed since the motion was filed. Plaintiff clearly has had ample time to respond if he so desired, and notably, did not request an extension of time from this Court to respond to the Board's motion.[4] While the Court could simply enter judgment in favor of the Board, the Court will, instead, consider each of the Board's arguments below using the record before the Court.

---

[4]Plaintiff joined defendant Pour's motion to continue and take depositions out of time, and filed a motion to continue the settlement conference, based upon his contention that defendant Pour's deposition is necessary and could not be obtained until after defendant Pour's criminal case concluded. Plaintiff's motion to continue the settlement conference noted that Pour pleaded guilty in his criminal case and Pour's sentencing was scheduled for October 20, 2010. Even if the Court gave the plaintiff every benefit of extending deadlines, and construed the magistrate judge's Orders as giving plaintiff an additional 30 days to respond after Pour's sentencing, plaintiff should have filed a response by November 19, 2010. Plaintiff has not filed his response as of the date the Court enters this Order: December 8, 2010, and has not directly requested an extension of time to respond.

## ANALYSIS

### I. Color of Law Issue

The Board raises the issue, in its motion for summary judgment, that even though plaintiff labels Pour's conduct as "under the color of state law," Pour was not acting under color of law and therefore plaintiff cannot maintain an action under 42 U.S.C. § 1983. Plaintiff alleges that Pour was off-duty, in Illinois–not the City of St. Louis–where he was employed as a police officer, intoxicated, kicked out of a bar, dressed in street clothes, and at no point identified himself as a police officer. In the first paragraph of plaintiff's second amended complaint, plaintiff alleges an action against Pour, a police officer of the City of St. Louis, in his **individual capacity** and against the St. Louis Metropolitan Police Department through the Board of Police Commissioners of the City of St. Louis. (Second Am. Compl.1.) The Board asserts that in light of the substance of plaintiff's pleadings and regardless of plaintiff's label, Pour's conduct was not performed under color of state law, and therefore is not actionable under § 1983.

"Under 42 U.S.C. § 1983, individual capacity suits seek to impose personal liability upon an officer for actions taken under color of law." *Johnson v. Board of Police Com'rs*, 370 F.Supp.2d 892, 897 (E.D. Mo. 2005) *citing Scheuer v. Rhodes*, 416 U.S.232, 237-38 (1974). "To prevail on a section 1983 claim, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that this conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Greco v. Guss*, 775 F.2d 161, 164 (7th Cir. 1985); *accord Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007).

Evidence that an officer was off-duty is not dispositive as to whether he was acting under

color of state law. 775 F.2d at 168. The Seventh Circuit "has held that off-duty officers acted under color of state law when they identified themselves as police officers, carried their badges and guns, and were required by department regulations 'to be always subject to duty.'" *Id.* (*quoting Davis v. Murphy*, 559 F.2d 1098, 1101 (7th Cir. 1977)).

Furthermore, "[w]hether a particular action was under color of state law depends 'largely on the nature of the specific acts the police officer performed, rather than on merely whether he was actively assigned at the moment to the performance of police duties." *Estate of Sims,* 506 F.3d at 516 (*quoting Pickrel v. City of Springfield, Illinois*, 45 F.3d 1115, 1118 (7th Cir. 1995)); *see also Payne v. Government of District of Columbia*, 559 F.2d 809, 825 n. 9 (D.C. Cir. 1977) ("The circumstances surrounding the use of a service revolver , rather than the mere fact of its use, have constitutional relevance. Surely one could not reasonably maintain that an off-duty police officer whose revolver accidentally discharged and hurt someone was acting under color of governmental authority." (Internal citation omitted)). Thus, the nature of the act is of utmost importance when determining whether an act is performed under color of state law. *Revene v. Charles County Com'rs*, 882 F.2d 870, 872 (4th Cir. 1989), *citing Monroe v. Pape*, 365 U.S. 167, 184-87 (1961), *overruled on other grounds*, *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658 (1978).

The court in *Revene* noted that where an officer, subject to local ordinance, is subject to being on duty at all times and expected to take action should the need arise, any action taken under this authority would be "under color of state law." 882 F.2d at 873. Thus, whether some local ordinance provided that an officer is to act as an officer all of the time, regardless of whether the officer is assigned to be on duty at a particular time is also an important

consideration. *Pickrel*, 45 F.3d at 1119. Additional considerations include whether the officer "was engaged in police activity, that he displayed any police power, or that he possessed any indicia of his office at the time." *Latuszkin v. City of Chicago*, 250 F.3d 502, 506 (7th Cir. 2001).[5] The Supreme Court opined that an action is taken under color of state law if it involves a "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Estate of Sims*, 506 F.3d at 515 (*quoting National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988)).

The essential inquiry here is whether plaintiff has created a triable issue of fact concerning whether Pour's actions related in some way to the performance of a police duty. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1517 (7th Cir. 1990); *see also Screws v. United States*, 325 U.S. 91, 111 (1945) (Defining "under color of law" as meaning under pretense of law and including acts of officers who are performing their official duties, even if those officers overstep their authority, but excluding acts of officers in their personal pursuits.); *Bonsignore v. City of New York*, 683 F.2d 635, 639 (2nd Cir. 1982) (Court did not allow plaintiff to pursue a claim under 42 U.S.C. § 1983 where off-duty police officer shot his wife, noting that the officer was off-duty when he shot her and was not acting under color of state law since his actions were performed in carrying out his personal pursuits and not "committed in the performance of any actual or pretended duty."). A question of fact regarding whether the actions occurred under the color of state law exists "if there remain unanswered questions of fact regarding the proper characterization of the actions." Gibson, 910 F.2d at 1517 (internal quotations omitted). Here,

[5]The Court in *Latuszkin* also considered whether the officer was driving his own car, but in that case an off-duty officer allegedly injured a plaintiff while driving drunk. 250 F.3d at 506. In the case at hand, there is no evidence as to what vehicle Pour drove to Mac and Mick's, or that Pour's vehicle was involved in any way.

no dispositive facts are in dispute regarding this issue.

Viewing all facts and drawing all inferences in favor of the plaintiff, Pour was not engaged in state action, but indeed was acting as a private citizen at the time plaintiff was injured. Pour was not dressed in his police uniform and was patronizing an establishment in Granite City, Illinois--outside of the City of St. Louis where he was employed as a police officer. Plaintiff stated that the man who shot him was a bald man in a striped shirt and jeans that he had seen for the first time a few minutes before in the parking lot, and he had no idea that Pour was a police officer until after the fact. Plaintiff's uncontroverted testimony establishes that Pour never stated to the plaintiff that he was a police officer or that plaintiff was under arrest. While plaintiff alleges in his second amended complaint that Pour was "brandishing" his badge and making it known that he was a police officer, plaintiff's own testimony directly contradicts this allegation and provides that nothing in regard to Pour's appearance or utterances (or lack thereof) would have made plaintiff believe Pour was a police officer.[6]

The plaintiff hangs his hat on the fact that Pour shot plaintiff using the gun provided to him by the City of St. Louis. However, the use of a service revolver alone is not determinative, and the Court must look at all of the circumstances surrounding the use of the revolver. *Payne*, 559 F.2d 809, 825 n.9. Just as no state action would lie where an off-duty officer whose service weapon discharged accidentally and hurt someone, the definition of state action under § 1983 cannot be stretched so far as to include a plain-clothed, off-duty, out-of-jurisdiction, intoxicated, police officer who is kicked out of a bar, gets in a scuffle and then shoots someone. The **nature**

[6]Even though plaintiff attempts to show that Pour used some police power by alleging that Pour "ordered" plaintiff's friend out of the car, plaintiff himself provided testimony that Pour was verbally non-responsive and that plaintiff did not have any idea that Pour was an officer until after he was shot.

of Pour's act was purely personal and not in furtherance of any official duty. This late night parking lot scuffle, which ended with the shooting of plaintiff by an intoxicated individual did not occur because Pour was clothed with the authority of state law. Furthermore, when plaintiff helped Pour up off the ground and Pour turned and shot him, he certainly misused his service weapon. However, in light of the evidence before the Court, the Court does not find that Pour's misuse of power was only made possible because Pour was "clothed with the authority of state law." *Sims*, 506 F.3d at 515. In fact, Pour was stripped of his authority as a state actor as a result of his intoxication and the relevant policy that relates to intoxication.

The Board has provided a copy of the Department procedures which state that an officer is not to act while intoxicated. The Department procedure, which sets forth procedures for complying with the Law Enforcement Officer Safety Act ("LEOSA"), which authorizes the concealed carry of firearms, specifically provides: "LEOSA does not provide authority for a person to carry a concealed firearm while under the influence of alcohol or any other intoxicating or hallucinating substance." (Special Order SO 1-05, Doc. 72, Exhibit C.)

Plaintiff has filed nothing to refute the Board's assertions. The Court, therefore, **FINDS** that Pour was not acting under the color of state law, and because action under color of state law is a jurisdictional prerequisite to a section 1983 claim, plaintiffs claim against Pour in his individual capacity is *sua sponte* **DISMISSED** for lack of subject matter jurisdiction. *Gibson*, 910 F.2d at 1514; *see also Robinson v. Bergstrom*, 579 F.2d 401, 404 (7th Cir. 1978), *overruled on other grounds*.

**II. Municipal Liability: Official Policy, Custom, or Policymaker Causing Constitutional Injury**

At the outset, the Court notes that a determination that Pour was not acting under the

color of state law is not dispositive of the municipal liability claim against the Board. *Gibson*, 910 F.2d at 1519. To present a municipal liability claim, the plaintiff must show that "an official policy or custom not only caused the constitutional violation, but was the 'moving force' behind it." *Estate of Sims*, 506 F.3d at 514 (*citing City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)). The Board itself is the state actor "and its action in maintaining the alleged policy at issue supplies the 'color of law' requirement under § 1983." *Gibson*, 910 F.2d at 1519.

Municipal liability arises under § 1983 when: (1) an express policy, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) a person with final policymaking authority causes a constitutional injury. *Baxter by Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 734-35 (7th Cir. 1994) (internal citations omitted), *superseded by statute on other grounds*, IND. CODE. 12-19-1-21 (2000). To impose liability on the Board under § 1983 the plaintiff "must prove that the constitutional deprivation was caused by an official municipal policy or custom." *Hollins v. City of Milwaukee*, 574 F.3d 822, 827 (7th Cir. 2009) (citing *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1237 (7th Cir. 1986)). Allegations of a specific pattern or series of incidents that support the general allegation of a custom or policy suffice to establish municipal policy or custom. *Hollins*, 574 F.3d at 827.

Plaintiff also asserts that the Board exhibited deliberate indifference, which led to the violation of his constitutional rights. "The inadequacy of police training may serve as the basis for § 1983 liability, but only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact." *Id*. (citing *City of Canton, Ohio v.*

*Harris*, 489 U.S. 378, 388 (1989). In addition, "[p]roof of deliberate indifference requires more than '[a] showing of simple or even heightened negligence.'" *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) (*citing Bd. Of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 407 (1997)). According to the Seventh Circuit:

> We shall find deliberate indifference on the part of policymakers only when such indifference may be considered a municipal policy or custom. This may arise in either of two circumstances. First, a municipality acts with deliberate indifference when, in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the deficiency exhibits deliberate indifference on the part of the municipal policymakers. Alternatively, we may find deliberate indifference when a repeated pattern of constitutional violations makes the need for further training ... plainly obvious to the city policymakers.

*Jenkins*, 487 F.3d at 492 (internal quotations and citations omitted).

Plaintiff has alleged a municipal policy, namely, a firearm policy for its officers (both on and off duty) which failed to set forth any guidance regarding transport of firearms across state lines, the carrying of firearms in situations which present a risk of intoxication, and/or any other circumstances in which an off-duty officer's judgment may be impaired, and instead, left the carrying of firearms while off-duty solely to the officer's discretion, thereby creating the impression with Pour that his acts were tolerated by the Board. Additionally, plaintiff alleges that as a result of the Board's policies and customs, officers, including Pour, believed that their actions would not be properly monitored by supervisory officers and that any misconduct would not be investigated or sanctioned, and would be tolerated. Finally, plaintiff alleges that the Board's policies and customs demonstrate a deliberate indifference on the part of the Board to the constitutional rights of persons who may foreseeably come into contact with officers of the Board, both on and off-duty, and caused the violation of plaintiff's rights.

In analyzing a § 1983 claim, the Court's first step is to identify the particular constitutional injury. *Vasquez v. Hernandez*, 60 F.3d 325, 328 (7th Cir. 1995). Plaintiff contends that the Board's policy of allowing officers, whether on or off duty, to use their own discretion as to whether or not to carry their service weapons without any further guidance is the state action that deprived him of his constitutional right to be free from unreasonable seizure.

The plaintiff has completely failed to put forth any evidence that the Board's policies have caused a constitutional deprivation. A policy which leaves to the discretion of the individual officer whether or not to carry his firearm while off-duty, or while crossing state lines does not, on its face, cause unreasonable seizures of persons in violation of their constitutional rights. Plaintiff wrongly alleges that the carrying of firearms is completely in the officer's discretion, even in situations which present a risk of intoxication or other situations where an officer's judgment may be impaired, creating the impression with officers that acts, such as Pour's in shooting plaintiff, would be tolerated. The exact opposite has been shown by the Board. The Board has set forth the policies and procedures of the police department, which establish guidelines concerning the carrying and use of firearms, including procedures for complying with LEOSA which does not authorize the carrying of a concealed firearm across state lines, or while under the influence of alcohol or any other intoxicating or hallucinating substance. The department manual specifically states that "A member of the Department shall be subject to disciplinary action for the violation of the rules of conduct set forth by the Department." Finally, the manual states: "Every member of the Department shall, at all times, maintain reasonable standards of courtesy in his/her relations with the public and shall conduct him/herself in such a manner that no discredit will be brought upon the Department in general or

him/herself in particular." The manual goes even further in its guidance for officers by providing examples of acts contrary to good conduct while on or off duty, including, but not limited to: "[r]eporting for duty in an intoxicated condition or drinking of alcoholic beverages of any kind, while on duty, or while in any part of the uniform which would readily identify the individual as a member of the Metropolitan Police Department," and "[a]ny conduct detrimental to the public peace and welfare." In addition to these specific guidelines, the department also maintains guidelines for investigation and discipline of officer misconduct.

The policies and guidelines put forth by the Board have completely contradicted plaintiff's allegations, and plaintiff's failure to put forth any facts showing a genuine issue for trial amounts to a complete failure of proof of essential elements of his case. The policies did provide guidelines to the officers, especially in situations where risk of intoxication is a factor, and provided consequences for failure to follow the policies. None of these policies could be read to have caused or been the moving force behind the shooting of the plaintiff on the parking lot of Mac and Mick's. To the contrary, the express policies, when followed, would have served to protect the plaintiff from any unlawful act by an intoxicated officer. The policies specifically prohibit the use of a firearm while intoxicated, and provide for sanctions and other discipline should the policies not be followed.

To the extent that the plaintiff's allegations can be construed to include an allegation of failure to train, or deliberate indifference on the part of the Board, plaintiff's allegations completely fail to meet the standard. Plaintiff's entire claim rests on this one incident in which he was shot by an off-duty officer. Plaintiff has not set forth any facts that show that a need for more training was obvious and likely to result in the violation of constitutional rights, nor did he

show a repeated pattern of constitutional violations that would make the need for more training obvious to the Board. *Jenkins*, 487 F.3d 482, 492.

The plaintiff has failed to make a sufficient showing to establish the existence of the essential elements of his case. Accordingly, the Court **GRANTS** the Board's motion for summary judgment (Doc. 72) and judgment is entered in **FAVOR** of defendants **TODD H. EPSTEN, BETTYE BATTLE-TURNER, VINCENT J. BOMMARITO, JULIUS K. HUNTER, FRANCIS G. SLAY, and DAVID R. HEATH** and **AGAINST** plaintiff **JEFFREY BLADDICK** on Count II of plaintiff's second amended complaint.

**III. State Law Tort Claims**

It is well established in the Seventh Circuit that "in a § 1983 case with pendent state claims that '[i]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.'" *Simkunas v. Tardi*, 720 F.Supp. 687, 699 (N.D. Ill. 1989) (*citing Bieneman v. City of Chicago*, 864 F.2d 463, 470 (7th Cir. 1988), *quoting United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also Hughes v. Meyer*, 880 F.2d 967, 972 (7th Cir. 1989).

Accordingly, the Court **DISMISSES** without prejudice the plaintiff's pendent state claims, namely, Count III for negligence against defendant Mac and Mick's, and Count IV for negligence against defendant Pour, as lacking in "'any independent basis for federal jurisdiction.'" *Simkunas*, 720 F.Supp. at 699, *citing Hughes*, 880 F.2d at 972.

**CONCLUSION**

Accordingly, the Court **GRANTS** defendant Board's motion for summary judgment (Doc. 72) as follows:

The Court **GRANTS** the Board's motion for summary judgment (Doc. 72) and judgment is entered in **FAVOR** of defendants **TODD H. EPSTEN, BETTYE BATTLE-TURNER, VINCENT J. BOMMARITO, JULIUS K. HUNTER, FRANCIS G. SLAY, and DAVID R. HEATH** and **AGAINST** plaintiff **JEFFREY BLADDICK** on Count II of plaintiff's second amended complaint.

Counts I, III, and IV of plaintiff's second amended complaint are **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

The Clerk of the Court is **DIRECTED** to enter judgment accordingly. Each party to bear its own costs.

**IT IS SO ORDERED**

**DATE: December 8, 2010**

**/s/ WILLIAM D. STIEHL**
**DISTRICT JUDGE**