IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JEFFREY BLADDICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 09-cv-330-WDS |
| | ) | |
| BRYAN POUR, TODD H. EPSTEN, | ) | |
| BETTYE BATTLE-TURNER, VINCENT | ) | |
| J. BOMMARITO, JULIUS K. HUNTER, | ) | |
| FRANCIS G. SLAY, DAVID R. HEATH, | ) | |
| and MAC AND MICK'S SPORTS BAR & | ) | |
| GRILL, INC., a corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**STIEHL, District Judge:**

Before the Court is defendants', individual members of the City of St. Louis Metropolitan Police Department Board of Police Commissioners named in their official capacities[1] ("Board"), motion for summary judgment against plaintiff pursuant to Fed. R. Civ. P. 56 (Doc. 72). This Court previously granted this motion, as plaintiff had not responded, but reopened the case for

---

[1] The Board of Police Commissioners consists of defendants Todd H. Epsten, Bettye Battle-Turner, Vincent J. Bommarito, Julius K. Hunter, and Francis G. Slay. The Board asserts that David Heath is the Board Secretary and not, in fact, a member of the Board.
   Plaintiff asserts that the Board members are the proper parties for actions against the police department of the City of St. Louis pursuant to MO. REV. STAT. § 84.010, which

> indicates that neither the City nor its agents possess the authority to make official policy concerning the actions of the Board of Police Commissioners or individual police officers. Therefore, the City cannot, as a matter of law, be liable under section 1983 as an official policy maker responsible for approving or condoning the actions of the police officers.

*Crigler v. City of St. Louis, Mo.*, 767 F.Supp. 197, 200 (E.D. Mo. 1991). Under Missouri law, to bring a claim against the Board of Police Commissioners, the complaint must name the individual board members in their official capacity, as the plaintiff did here. *Id.* at 198.

reconsideration of the summary judgment motion. After the Court granted plaintiff's motion for reconsideration (Doc. 95), plaintiff filed his response (Doc. 96), to which the defendants have not replied.

## **BACKGROUND**

This action arises out of the shooting of plaintiff by defendant Bryan Pour ("Pour") in the parking lot of Mac and Mick's Sports Bar & Grill ("Mac and Mick's") during the early morning hours of November 9, 2008. On the evening of November 8, 2008, and the morning of November 9, 2008, Pour and other off-duty City of St. Louis police officers patronized Mac and Mick's in Granite City, Illinois. Pour and the other officers were not wearing their police uniforms, but were allegedly brandishing their badges and "taking other affirmative steps to advertise the fact that they were police officers." (Second Am. Compl. 4.) At least three of the off-duty officers were carrying their service weapons, including Pour. Before the incident, Pour was allegedly kicked out of Mac and Mick's because of his level of intoxication, but he did not immediately leave and instead remained on the parking lot.

Soon after Pour was kicked out, plaintiff arrived at Mac and Mick's and spoke to some of his friends, who were smoking cigarettes outside the bar. Plaintiff's friends then proceeded toward their car, at which time Pour and plaintiff's friends engaged in some sort of argument and scuffle which left Pour on the ground. During his deposition, plaintiff testified that he heard raised voices and proceeded toward his friend's car. Plaintiff stated that he observed Pour sitting on the ground and tried to help him up by standing behind him and using Pour's elbows to lift him. Plaintiff said to Pour, "Hey, look, my buddies didn't hurt you." (Bladdick Dep. 40-42;52, Dec. 29, 2009.) Plaintiff stated that Pour said nothing but then spun around, drew his gun, and pressed it against

2

plaintiff's chest. Plaintiff testified that he tried to step back but, "before I could do anything, I'm shot." (Bladdick Dep. 41, 42, 54.) Pour fired a single round and the bullet lodged in plaintiff's torso.

During his deposition plaintiff also stated that he had neither met nor conversed with Pour at any point in the evening before helping him off the ground, but had merely seen Pour on the parking lot at Mac and Mick's earlier that evening. Plaintiff stated that he had no idea that Pour was a police officer, and in fact plaintiff described Pour as a bald male in a striped shirt and jeans. In other words, during plaintiff's interaction with him, Pour was not wearing his uniform, did not show his badge, did not identify himself as an officer, and did not orally communicate any type of order pursuant to his police power.

Four counts of plaintiff's Second Amended Complaint remain in this case: (I) violation of 42 U.S.C. § 1983 by defendant Pour in his individual capacity;[2] (II) violation of 42 U.S.C. § 1983 by the St. Louis Metropolitan Police Department through the defendant Board; (III) negligence by defendant Mac and Mick's[3]; (IV) negligence by defendant Pour.[4]

The Board has filed its motion for summary judgment with respect to Count II of plaintiff's second amended complaint, the only Count that is directed at the Board. In Count II plaintiff alleges

---

[2] In his second amended complaint (Doc. 41) plaintiff asserts that the claims against Pour are against him in his individual capacity, but also asserts that at all relevant times Pour was acting under the color of law.

[3] Count III, against Mac and Mick's, was included in plaintiff's second amended complaint, filed August 12, 2009 (Doc. 41). Previously, on June 8, 2009, a Clerk's entry of default was entered against Mac and Mick's (Doc. 13), but default judgment was never entered against Mac and Mick's, and plaintiff's motion for entry of default judgment against Mac and Mick's was denied by this Court as moot in light of plaintiff's filing of his second amended complaint (Doc. 64).

[4] Count V, vicarious liability of the City of St. Louis was previously dismissed without prejudice by this Court (Doc. 64).

that the Board is liable under 42 U.S.C. § 1983 because it developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of persons, such as plaintiff, which caused the violation of plaintiff's rights. More specifically, the Board allegedly employed a firearm policy for its officers (both on and off duty) which failed to set forth any guidance regarding the transport of firearms across state lines, the carrying of firearms in situations which present a risk of intoxication, and/or any other circumstances in which an off-duty officer's judgment may be impaired, instead, leaving the carrying of firearms while off-duty solely to the officer's discretion, thereby creating the impression with Pour that his acts were tolerated by the Board.

Additionally, plaintiff alleges that as a result of the Board's policies and customs, officers, including Pour, believed that their actions would not be properly monitored by supervisory officers and that any misconduct would not be investigated or sanctioned, and would therefore be tolerated. Finally, plaintiff alleges that the Board's policies and customs demonstrate a deliberate indifference on the part of the Board to the constitutional rights of persons who may foreseeably come into contact with officers of the Board, both on and off-duty, and caused the violation of plaintiff's rights.

## **LEGAL STANDARD**

Under Fed. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, "[t]he evidence of the non-movant is

to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

## ANALYSIS

### I. Color of Law Issue

The Board raises the issue, in its motion for summary judgment, that even though plaintiff labels Pour's conduct as "under the color of state law," Pour was not acting under color of law and therefore plaintiff cannot maintain an action under 42 U.S.C. § 1983. Plaintiff alleges that Pour was off-duty, in Illinois–not the City of St. Louis–where he was employed as a police officer, intoxicated, kicked out of a bar, dressed in street clothes, and at no point identified himself as a police officer. In the first paragraph of plaintiff's second amended complaint, plaintiff alleges an action against Pour, a police officer of the City of St. Louis, in his **individual capacity** and against the St. Louis Metropolitan Police Department through the Board of Police Commissioners of the City of St. Louis. (Second Am. Compl.1.) The Board asserts that in light of the substance of plaintiff's pleadings and regardless of plaintiff's label, Pour's conduct was not performed under color of state law, and therefore is not actionable under § 1983.

In his response to defendants' motion for summary judgment, plaintiff asserts that Pour was acting under the color of state law based upon a number of circumstances revealed by Pour's deposition testimony: (1) Pour testified that he used his police training while attempting to regain control over his gun that had become dislodged from the back of his pants when he was assaulted outside the bar; (2) Pour thought he was being assaulted because the individuals knew he was a police officer and were going after his gun, as he did not know any other reason why the individuals would have assaulted him; (3) Pour believed everyone at Mac and Mick's knew he was a police officer; (4) Pour was carrying his badge as required pursuant to special orders of

the City of St. Louis (which Pour testified required him to carry his badge at all times, regardless of whether he was on duty, and what state he was in) and pursuant to the "Failure to Act" policy (under which a police officer was obligated to act if he witnessed a law being broken, or be subject to a lawsuit, reprimand, or even termination); (5) Pour stated that if he had been able to gain control of the situation, he intended to arrest the individuals; and (6) Pour testified that he actually said "police" during the assault and while he was trying to maintain control of his firearm. Essentially, Pour testified that he believed he was being assaulted because the individuals knew he was a police officer and they wanted his gun, and he would have effected an arrest had he been able to gain control of the situation.

"Under 42 U.S.C. § 1983, individual capacity suits seek to impose personal liability upon an officer for actions taken under color of law." *Johnson v. Board of Police Com'rs*, 370 F.Supp.2d 892, 897 (E.D. Mo. 2005) citing *Scheuer v. Rhodes*, 416 U.S. 232, 237-38 (1974). "To prevail on a section 1983 claim, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that this conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Greco v. Guss*, 775 F.2d 161, 164 (7th Cir. 1985); *accord Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007).

Evidence that an officer was off-duty is not dispositive as to whether he was acting under color of state law. 775 F.2d at 168. The Seventh Circuit "has held that off-duty officers acted under color of state law when they identified themselves as police officers, carried their badges and guns, and were required by department regulations 'to be always subject to duty.'" *Id.* (quoting *Davis v. Murphy*, 559 F.2d 1098, 1101 (7th Cir. 1977)).

6

Furthermore, "[w]hether a particular action was under color of state law depends 'largely on the nature of the specific acts the police officer performed, rather than on merely whether he was actively assigned at the moment to the performance of police duties.'" *Estate of Sims*, 506 F.3d at 516 (quoting *Pickrel v. City of Springfield, Illinois*, 45 F.3d 1115, 1118 (7th Cir. 1995)); *see also Payne v. Government of District of Columbia*, 559 F.2d 809, 825 n. 9 (D.C. Cir. 1977) ("The circumstances surrounding the use of a service revolver, rather than the mere fact of its use, have constitutional relevance. Surely one could not reasonably maintain that an off-duty police officer whose revolver accidentally discharged and hurt someone was acting under color of governmental authority." (Internal citation omitted)). Thus, the nature of the act is of utmost importance when determining whether an act is performed under color of state law. *Revene v. Charles County Com'rs*, 882 F.2d 870, 872 (4th Cir. 1989), citing *Monroe v. Pape*, 365 U.S. 167, 184-87 (1961), *overruled on other grounds*, *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658 (1978).

The court in *Revene* noted that where an officer, subject to local ordinance, is subject to being on duty at all times and expected to take action should the need arise, any action taken under this authority would be "under color of state law." 882 F.2d at 873. Thus, whether some local ordinance provided that an officer is to act as an officer all of the time, regardless of whether the officer is assigned to be on duty at a particular time is also an important consideration. *Pickrel*, 45 F.3d at 1119. Additional considerations include whether the officer "was engaged in police activity, that he displayed any police power, or that he possessed any indicia of his office at the time." *Latuszkin v. City of Chicago*, 250 F.3d 502, 506 (7th Cir.

7

2001).[5] The Supreme Court opined that an action is taken under color of state law if it involves a "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Estate of Sims*, 506 F.3d at 515 (quoting *National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988)).

The essential inquiry here is whether plaintiff has created a triable issue of fact concerning whether Pour's actions related in some way to the performance of a police duty. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1517 (7th Cir. 1990); *see also Screws v. United States*, 325 U.S. 91, 111 (1945) (Defining "under color of law" as meaning under pretense of law and including acts of officers who are performing their official duties, even if those officers overstep their authority, but excluding acts of officers in their personal pursuits.); *Bonsignore v. City of New York*, 683 F.2d 635, 639 (2d Cir. 1982) (Court did not allow plaintiff to pursue a claim under 42 U.S.C. § 1983 where off-duty police officer shot his wife, noting that the officer was off-duty when he shot her and was not acting under color of state law since his actions were performed in carrying out his personal pursuits and not "committed in the performance of any actual or pretended duty."). A question of fact regarding whether the actions occurred under the color of state law exists "if there remain unanswered questions of fact regarding the proper characterization of the actions." *Gibson*, 910 F.2d at 1517 (internal quotations omitted). Here, unanswered questions do remain as to the proper characterization of Pour's actions.

Viewing all facts and drawing all inferences in favor of the plaintiff, a question of fact remains. Pour could have been acting under the color of state law, considering that he was

---

[5]The Court in *Latuszkin* also considered whether the officer was driving his own car, but in that case an off-duty officer allegedly injured a plaintiff while driving drunk. 250 F.3d at 506. In this case, there is no evidence that Pour's vehicle was involved in any way.

carrying his badge and service revolver, he testified that he yelled "police," he would have arrested the individuals who assaulted him had he gained control of the situation, and he believed the entire altercation ensued because he was an officer and the individuals were attempting to take his gun.  Finally, Pour testified that he was repeatedly told, during training and at other times, that he was obligated to act if he witnessed a violation of the law, regardless of whether or not he was on duty, and that he should always carry his weapon with him, even in bars, and even if he was drinking alcohol, since, he was told, crimes often occur in bars.  On the other hand, Pour was not dressed in his police uniform and was patronizing an establishment in Granite City, Illinois--outside of the City of St. Louis where he was employed as a police officer. Additionally, plaintiff previously alleged that the man who shot him was a bald man in a striped shirt and jeans that he had seen for the first time a few minutes before in the parking lot, and he had no idea that Pour was a police officer until after the fact.  Plaintiff's testimony that Pour never stated to the plaintiff that he was a police officer or that plaintiff was under arrest is contradicted by Pour's testimony that he yelled "police."  This evidence, taken together with plaintiff's allegations in his second amended complaint that Pour was "brandishing" his badge and making it known that he was a police officer, and that Pour "ordered" plaintiff's friend out of the car, a genuine issue of material fact exists as to whether Pour was acting under color of state law.   It is not entirely clear whether the nature of Pour's act was personal or in furtherance of an official duty.

The Court, therefore, **FINDS** that a genuine issue of material fact exists as to whether or not Pour was acting under the color of state law.  While action under color of state law is a jurisdictional prerequisite to a section 1983 claim, this question of fact precludes summary

9

judgment on this issue.

## II.  Municipal Liability: Official Policy, Custom, or Policymaker Causing Constitutional Injury

The Court notes that a determination that Pour was or was not acting under the color of state law is not dispositive of the municipal liability claim against the Board. *Gibson*, 910 F.2d at 1519. To present a municipal liability claim, the plaintiff must show that "an official policy or custom not only caused the constitutional violation, but was the 'moving force' behind it." *Estate of Sims*, 506 F.3d at 514 (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)). The Board itself is the state actor "and its action in maintaining the alleged policy at issue supplies the 'color of law' requirement under § 1983." *Gibson*, 910 F.2d at 1519.

Municipal liability arises under § 1983 when: (1) an express policy, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) a person with final policymaking authority causes a constitutional injury. *Baxter by Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 734-35 (7th Cir. 1994) (internal citations omitted), *superseded by statute on other grounds*, IND. CODE. 12-19-1-21 (2000). To impose liability on the Board under § 1983 the plaintiff "must prove that the constitutional deprivation was caused by an official municipal policy or custom." *Hollins v. City of Milwaukee*, 574 F.3d 822, 827 (7th Cir. 2009) (citing *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1237 (7th Cir. 1986)). Allegations of a specific pattern or series of incidents that support the general allegation of a custom or policy suffice to establish municipal policy or custom. *Hollins*, 574 F.3d at 827.

Plaintiff also asserts that the Board exhibited deliberate indifference, which led to the

violation of his constitutional rights. "The inadequacy of police training may serve as the basis for § 1983 liability, but only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact." *Id*. (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). In addition, "[p]roof of deliberate indifference requires more than '[a] showing of simple or even heightened negligence.'" *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) (citing *Bd. Of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 407 (1997)). According to the Seventh Circuit:

> We shall find deliberate indifference on the part of policymakers only when such indifference may be considered a municipal policy or custom. This may arise in either of two circumstances. First, a municipality acts with deliberate indifference when, in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the deficiency exhibits deliberate indifference on the part of the municipal policymakers. Alternatively, we may find deliberate indifference when a repeated pattern of constitutional violations makes the need for further training ... plainly obvious to the city policymakers.

*Jenkins*, 487 F.3d at 492 (internal quotations and citations omitted).

Plaintiff has alleged a municipal policy, namely, a firearm policy for its officers (both on and off duty) which failed to set forth any guidance regarding transport of firearms across state lines, the carrying of firearms in situations which present a risk of intoxication, and/or any other circumstances in which an off-duty officer's judgment may be impaired, and instead, left the carrying of firearms while off-duty solely to the officer's discretion, thereby creating the impression with Pour that his acts were tolerated by the Board. Additionally, plaintiff alleges that as a result of the Board's policies and customs, officers, including Pour, believed that their actions would not be properly monitored by supervisory officers and that any misconduct would not be investigated or sanctioned, and would be tolerated. Finally, plaintiff alleges that the

11

Board's policies and customs demonstrate a deliberate indifference on the part of the Board of the constitutional rights of persons who may foreseeably come into contact with officers of the Board, both on and off-duty, and caused the violation of plaintiff's rights.

In analyzing a § 1983 claim, the Court's first step is to identify the particular constitutional injury. *Vasquez v. Hernandez*, 60 F.3d 325, 328 (7th Cir. 1995). Plaintiff contends that the Board's policy of allowing officers, whether on or off duty, to use their own discretion as to whether or not to carry their service weapons without any further guidance is the state action that deprived him of his constitutional right to be free from unreasonable seizure.

In its motion for summary judgment, the Board has set forth the written policies and procedures of the police department, which establish guidelines concerning the carrying and use of firearms, including procedures for complying with LEOSA (which authorizes the carrying of a concealed firearm across state lines, but not while under the influence of alcohol or any other intoxicating or hallucinating substance). The department manual specifically states that "A member of the Department shall be subject to disciplinary action for the violation of the rules of conduct set forth by the Department." Finally, the manual states: "Every member of the Department shall, at all times, maintain reasonable standards of courtesy in his/her relations with the public and shall conduct him/herself in such a manner that no discredit will be brought upon the Department in general or him/herself in particular." The manual goes even further in its guidance for officers by providing examples of acts contrary to good conduct while on or off duty, including, but not limited to: "[r]eporting for duty in an intoxicated condition or drinking of alcoholic beverages of any kind, while on duty, or while in any part of the uniform which would readily identify the individual as a member of the Metropolitan Police Department," and

"[a]ny conduct detrimental to the public peace and welfare." In addition to these specific guidelines, the department also maintains guidelines for investigation and discipline of officer misconduct.

In his response to the Board's motion, the plaintiff directs the Court's attention to Pour's testimony, which contains evidence of an unwritten custom or policy of the City of St. Louis police officers regarding the carrying of firearms that could lead to the deprivation of constitutional rights. Specifically, a number of Pour's statements shed light on a potential "policy" regarding firearms[6]: (1) Pour testified that he was instructed to always carry his gun, regardless of whether he was in Missouri or Illinois, or any other state, stating, "I was specifically instructed to do so even at bars where alcohol was being served because those are the types of places at which trouble occurred. This was directed, regardless of the state in which I was situated." (Pour Deposition p.12); (2) Pour was taught that Illinois establishments had fake metal detectors and that he could escape detection by a metal detecting wand if he hid his gun in his underwear and then wore a metal belt buckle so that it seemed as if the belt buckle alerted the detector and not the weapon; (3) Pour stated that a number of officers (except for one, namely, Officer Fantich) encouraged carrying weapons in bars, "from class supervisor to officers that they brought in to do role playing that helped out with the instruction for role-playing scenarios to particularly the defensative [sic] tactics instructor, and even other individuals that worked at the academy." (*Id*. at 16-17); (4) Pour testified that when Officer Tucker, a training officer, was specifically asked whether officers were expected not to consume alcohol if carrying in bars, he

---

[6] For each of the examples cited, Pour testified that he was advised of or taught this information during his official police officer training, including classroom training, training exercises, or field training.

13

simply stated that the officers were expected to have their guns with them at all times and that they were "not expected to never go out ever again and not have any drinks." (*Id*. at 159); (5) Pour testified that Officer Tucker suggested purchasing a second, smaller, and more easily concealable gun so that officers could carry anywhere, "including East St. Louis, bars, casinos, anywhere that you happened to be and you don't want anybody to see them." (*Id*. at 161); (6) during a portion of training when Pour rode along with another officer, that officer told Pour about an individual who was shot on his way out of a "police bar" he had attempted to rob, and Pour was told "that this is exactly why we carry our guns in bars because he says it's a criminal element there." (*Id.* at 162); (7) another training officer told the trainees that bad things happen at bars and that he recommended that they always carry their guns at bars (*Id.* at 163); (8) Pour testified that he witnessed an officer out at a bar in an intoxicated state being questioned by Officer Mayer as to whether he had his gun with him, and even though he was intoxicated, Officer Mayer directed him to return home and get his gun since he did not have it with him (*Id*. at 164); (9) the class president told the class that anytime they had their badges on them, they should also have their guns, including in bars (*Id*. at 165); and (10) upon presenting instructors with hypothetical situations, including situations including alcohol, no instructor said not to carry his gun in any such situation, except for one officer. In sum, plaintiff asserts that the Board cannot, on the one hand, train officers that they will be terminated if they fail to act when observing criminal activity, tell them that criminal activity is likely to occur in bars, and then claim that their "policy" is that officers are not allowed to carry a firearm in those bars, where the risk of intoxication is present.

       The policies and guidelines set forth by the Board and those set forth by the plaintiff,

14

have created a genuine issue of material fact as to what, in fact, is the true policy of the Board regarding the carrying of firearms in situations where the risk of intoxication is a factor. The submissions by the Board of the written policies, when followed, would have served to protect the plaintiff from any unlawful act by an intoxicated officer. The policies specifically prohibit the use of a firearm while intoxicated, and provide for sanctions and other discipline should the policies not be followed.[7] However, the verbal instructions and statements from other officers directly contradicted the written policies. Taking the plaintiff's version of the "policies" regarding the use of firearms where the risk of intoxication is a factor as true, these policies could be found to have caused or been the moving force behind the shooting of the plaintiff on the parking lot of Mac and Mick's.

To the extent that the plaintiff's allegations can be construed to include an allegation of failure to train, or deliberate indifference on the part of the Board, plaintiff's allegations create a question of fact as to whether the Board was deliberately indifferent. While plaintiff's entire claim rests on this one incident in which he was shot by an off-duty officer, plaintiff has alleged that officers were always subject to duty, or, alternatively, faced termination, and were also taught to carry their firearms, even when the risk of intoxication is present. Plaintiff has presented enough evidence to create a question of fact as to whether the need for better guidelines is obvious in circumstances in which the possession of a firearm in the midst of potential intoxication could lead to the deprivation of constitutional rights.

---

[7] Plaintiff asserts that even though his initial pleadings included statements that Pour was intoxicated, plaintiff has changed his position, and now states that no evidence has been presented to prove that Pour was intoxicated, and therefore, the Court must infer, at this point, that Pour was not intoxicated and therefore did not violate the Board's written policies, including LEOSA.

## **CONCLUSION**

Accordingly, the Court **DENIES** defendant Board's motion for summary judgment (Doc. 72) on all grounds raised.


**IT IS SO ORDERED**

**DATE:  June 7, 2010**

                                          **/s/  WILLIAM D. STIEHL**
                                               **DISTRICT JUDGE**